**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH C. TODD | : | |
| | : | |
| Appellant | : | No. 1595 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 13, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0001429-2016,
CP-09-CR-0003144-2016

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 03, 2019**

Appellant, Joseph C. Todd, appeals *nunc pro tunc* from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his bench trial convictions for fourteen counts of recklessly endangering another person, three counts of criminal attempt—arson, two counts of terroristic threats, and one count each of disorderly conduct, criminal attempt—criminal homicide, aggravated assault, arson, risking catastrophe, stalking, and resisting arrest.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

---

[1] 18 Pa.C.S.A. §§ 2705, 901(a), 2706(a)(1), 5503(a)(4), 901(a), 2702(a)(1), 3301(a)(1)(ii), 3302(b), 2709.1(a)(1), and 5104, respectively.

Appellant raises the following issues for our review:

> WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE REQUISITE INTENT TO SUSTAIN A CONVICTION FOR CRIMINAL ATTEMPT HOMICIDE, WHERE THE EVIDENCE FAILED TO ESTABLISH THAT VICTIM, K.T., WAS PRESENT IN THE HOME AT THE TIME THE FIRE WAS STARTED?
>
> WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE REQUISITE INTENT TO SUSTAIN A CONVICTION FOR CRIMINAL ATTEMPT HOMICIDE, WHERE APPELLANT'S ACTIONS WERE TAKEN IN AN ATTEMPT TO KILL HIMSELF, AND NOT K.T.?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable C. Theodore Fritsch, Jr., we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed July 19, 2018, at 9-12) (finding: Commonwealth presented evidence that on 3/6/16, Appellant entered Victim's home in violation of PFA order and bail agreement stemming from Appellant's 1/15/16 altercation with Victim; Appellant grabbed Victim by her arms, dragged her to basement, pummeled her with his fists, and threatened to kill Victim; after violent struggle and loss of consciousness, Victim regained consciousness and escaped from home; when police arrived on scene, they observed numerous indicia that Appellant had attempted to set residence on fire; police saw scattered matches on floor and smoke emanating from basement and detected powerful odor of natural gas and smoke throughout

house; two burners on kitchen stove were activated; when police attempted to turn off gas main, they observed handle was severely bent in manner to prevent shut down; further, entire basement had severe fire and smoke damage; no evidence supported Appellant's claim that he renounced his criminal efforts; if Victim had not regained consciousness, she likely would have died in fire; fact that Appellant might have also intended to commit suicide does not mitigate steps he took to kill Victim; evidence was sufficient to sustain Appellant's conviction for attempted homicide). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/19

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                          :

            v.                               :    CP-09-CR-0001429-2016
                                          :    CP-09-CR-0003144-2016

JOSEPH C. TODD                      :

## **OPINION**

Appellant, Joseph C. Todd (hereinafter "Appellant"), has filed an appeal to the Superior Court of Pennsylvania from the judgment of sentence entered and imposed by this Court on January 13, 2017. Following a waiver trial on the offenses charged in both CP-09-CR-0001429-2016 and CP-09-CR-0003144-2016, the Appellant was found guilty of all counts.

With respect to CP-09-CR-0001429-2016, the Appellant was found guilty of three counts of Criminal Attempt–Arson[1], three counts of Recklessly Endangering Another Person[2], one count of Terroristic Threats[3], and one count of Disorderly Conduct[4]. With respect to CP-09-CR-0003144-2016, the Appellant was found guilty of one count of Criminal Attempt-Criminal Homicide[5], one count of Aggravated Assault[6], one count of Arson[7], one count of Risking Catastrophe[8], one count of Stalking[9], one count of Terroristic Threats[10], eleven counts of Recklessly Endangering Another Person[11], and one count of Resisting Arrest.[12] Following a sentencing hearing, Appellant was sentenced to an aggregated period of incarceration of not less

[1] 18 Pa. Stat. and Cons. Stat. Ann. § 901 §§A
[2] 18 Pa. Stat. and Cons. Stat. Ann. § 2705 §§A
[3] 18 Pa. Stat. and Cons. Stat. Ann. § 2706 §§A1
[4] 18 Pa. Stat. and Cons. Stat. Ann. § 5503 §§AA
[5] 18 Pa. Stat. and Cons. Stat. Ann. § 901 §§A
[6] 18 Pa. Stat. and Cons. Stat. Ann. § 2702 §§A1
[7] 18 Pa. Stat. and Cons. Stat. Ann. § 3301 §§A1(ii)
[8] 18 Pa. Stat. and Cons. Stat. Ann. § 3302 §§B
[9] 18 Pa. Stat. and Cons. Stat. Ann. § 2709.1 §§A1
[10] 18 Pa. Stat. and Cons. Stat. Ann. § 2706 §§A1
[11] 18 Pa. Stat. and Cons. Stat. Ann. § 2705
[12] 18 Pa. Stat. and Cons. Stat. Ann. § 5104

1

than twelve (12) years nor more than twenty-four (24) years.[13] This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## BACKGROUND

The underlying offenses in the instant case stem from two separate incidents occurring on January 15, 2016 and March 6, 2016 respectively. In the early evening hours of January 15, 2016 (hereinafter referred to as the "January Incident"), law enforcement officers investigated an alleged arson and domestic disturbance at a residence located at 3760 West Brandon Way, Doylestown, PA 18902 (sometimes referred to as the "residence").[14] Shortly after coming home from work, the Appellant and his wife, Kathy Todd (hereinafter "Kathy"), began engaging in a verbal altercation which quickly turned violent.

The argument, which concerned a potential divorce between Appellant and Kathy, began in the upstairs master bathroom and bedroom of the residence. The Appellant grabbed Kathy's wrists and began pushing her toward the bathroom shower before letting her go. During the altercation, the Appellant knocked over a plant and a vase. The Appellant also broke a lamp. Immediately thereafter, the Appellant stated that Kathy "wouldn't see a divorce", that there would be a murder-suicide, and that he was going to cut the gas lines. Kathy then left the bedroom and proceeded to the basement. The Appellant followed her holding a pair of Channellock pliers. At the time, the Appellant's children were in the basement. The Appellant then commanded Kathy to, "Get the kids, and get out of the house."

---

[13] This period incarceration represents a consecutive sentence. With respect to CP-09-0001429-2016, the Appellant was sentenced to a period of incarceration of not less than one (1) year to nor more than two (2) years for the crime of Criminal Attempt-Arson. With respect to CP-09-0003144-2016, the Appellant was sentenced to a period of incarceration of not less than seventy-eight (78) months nor more than one hundred fifty-six (156) months for the crime of Criminal Attempt-Criminal Homicide. In this same criminal information, Appellant was also sentenced to a period of not less than fifty-four (54) months nor more than one hundred eight (108) months for the crime of Arson.

[14] The residence is a two-story single family dwelling with a finished basement and is heated by natural gas supplied by PECO.

2

While in the basement and after issuing the above-mentioned command to Kathy, the Appellant went to the residence's utility room. Kathy testified that she heard a metal on metal sound emanating from the utility room. Upon hearing such a sound, Kathy told Appellant that was she was going to notify law enforcement to which the Appellant responded, "Go ahead. You probably won't make it." Kathy then told her children to get out of the house immediately. The children left and went to a neighbor's home.

After Appellant threatened Kathy that she, "probably won't make it," Kathy called the police. Once law enforcement arrived on scene, the police evacuated the immediately surrounding homes, one of which was occupied. Law enforcement also attempted to make contact with Appellant. They eventually observed Appellant exiting the house holding a wet rag. A pack of matches was also found on Appellant's person.

During the January Incident, law enforcement entered the residence to investigate. Once inside, police officers noticed an overwhelming scent of natural gas with a more concentrated odor emanating from the basement. There was also apparent damage to the gas lines of the home specifically with regard to a coupling on the residence's hot water heater inside the utility room. Police officer Timothy Johnson testified that he noticed "teeth" marks on this coupling caused by Channellock pliers. Douglas Wilson, a plumber who arrived on scene to investigate the gas leak, testified that the particular coupling with teeth marks about which Officer Johnson testified, was loosened to a degree which would allow gas to leak. Inside the utility room was a furnace. Wilson testified that if natural gas was released from that union, the furnace could ignite causing an explosion.

The Appellant was thereafter arrested and charged with one count of Criminal Attempt-

3

Arson Inhabited Building or Structure[15], one count of Criminal Attempt-Arson Endangering Property[16], one count of Criminal Attempt-Reckless Burning or Exploding[17], three counts of Recklessly Endangering Another Person[18], one count of Terroristic Threats with the Intent to Terrorize Another[19], one count of Disorderly Conduct[20], and one count of Risking Catastrophe.[21] As a condition of Appellant's bail, there was a no contact provision with respect to Appellant and Kathy. After the January Incident, Kathy obtained a protection from abuse order which prohibited the Appellant from having contact with her.

With regard to the January Incident, a preliminary hearing was held on February 29, 2016. At the preliminary hearing, the Risking Catastrophe charge was withdrawn. At Kathy's request, Appellant's bail was modified so that Kathy could have contact with Appellant concerning their upcoming divorce proceeding, finances, and selling their home. Pursuant to this request, Appellant's bail was modified with the condition that there be no inappropriate conduct between Appellant and Kathy.

On March 6, 2016 (hereinafter the "March Incident"), a second violent episode occurred. At approximately 2:30 p.m., the Appellant, in violation of his bail and the protection from abuse order, entered the residence through an open garage door. At the time, Kathy was sitting in the residence's office. The Appellant walked into the office and said, "It was a big mistake to leave the garage door open." The Appellant then grabbed Kathy by the arms and began dragging her through the residence's kitchen in an attempt to pull her toward the basement steps. At the time, Kaitlyn, a daughter of Appellant and Kathy, was present in the home. As she was being dragged

---

[15] 18 Pa. Stat. and Cons. Stat. Ann. § 901
[16] 18 Pa. Stat. and Cons. Stat. Ann. § 901
[17] 18 Pa. Stat. and Cons. Stat. Ann. § 901
[18] 18 Pa. Stat. and Cons. Stat. Ann. § 2705
[19] 18 Pa. Stat. and Cons. Stat. Ann. § 2706 §§ A1
[20] 18 Pa. Stat. and Cons. Stat. Ann. § 5503 §§ A4
[21] 18 Pa. Stat. and Cons. Stat. Ann. § 3302 §§ B

4

to the basement area, Kathy implored Kaitlyn to call 911 and to leave the home. Kaitlynn then dialed 911 and escaped from the residence.

The Appellant continued to carry Kathy down the basement steps. The residence's basement steps are bifurcated by a landing area. Upon reaching this landing, the Appellant pushed Kathy down the remaining steps onto the basement's floor whereby Kathy landed on her back and hit her head. The Appellant then jumped on top of Kathy saying that Kathy was "done", that she was "dead," and that he was going to kill her. The Appellant then grabbed Kathy by her legs and began to carry her toward the basement's utility room. While doing so, the Appellant began to punch Kathy in her face, mouth, and stomach. Thereafter, Kathy in an attempt to escape from Appellant, ran toward a nearby couch. The Appellant then grabbed Kathy causing the two parties to fall onto the floor with the Appellant landing on top of Kathy. Appellant then began punching Kathy in the face and resumed dragging Kathy toward the utility room. At one point during the altercation, the Appellant smashed a framed glass picture over Kathy's head. Sometime thereafter, Kathy lost consciousness. Upon regaining consciousness and noticing that the Appellant was not nearby, Kathy ran out of the residence and fled to a neighbor's house. Once there, she immediately dialed 911.

Law enforcement and emergency services soon arrived on scene to investigate. Upon entering the residence, Sergeant Paul Kreuter noticed a light smoke permeating throughout the residence's first floor. Sergeant Kreuter also observed scattered matches on the floor and smoke emanating from the basement stairwell. At the same time, Officer Timothy Phillips entered the residence and observed the kitchen's gas stove had two burners activated. One burner was lit while the other was merely leaking gas. Officer Phillips immediately turned off both burners. Thereafter, because the smell of gas was overwhelming, Officer Phillips along with Officer

5.

MacMoran exited the residence and attempted to shut off the gas main. Once outside, Officer Phillips identified the gas main and observed that its handle was severely bent so as to prevent someone from turning off the gas. Using a screwdriver and a drill bit taken from inside the garage, both officers were able to shut off the gas main.

While Officer Phillips and Officer MacMoran were outside shutting off the gas main, Sergeant Kreuter began to descend the basement's steps and observed the smoke growing thicker. Given the poor air quality in the basement, Sergeant Kreuter could not breathe on his own. Sergeant Kreuter then returned to the first floor to obtain a self-contained breathing apparatus from firefighters on scene.

Once Sergeant Kreuter returned to the basement, the smoke condition was increasingly heavy as it appeared a fire was emanating from the utility room. As Sergeant Kreuter walked through the basement, he observed that he was stepping on broken glass. Using his flashlight due to the thickness of the smoke, Sergeant Kreuter observed the Appellant's legs approximately twenty feet away near the basement's utility room. Sergeant Kreuter demanded that the Appellant show him his hands. The Appellant disregarded Officer Kreuter's command and locked himself inside the utility room. The Appellant then responded, "F--- you. Kill me."

At the time the Appellant barricaded himself inside the utility room, additional supporting officers arrived to assist Sergeant Kreuter in apprehending the Appellant. Officer Phillips and Officer Mooney were two such officers. As Sergeant Kreuter commanded the Appellant to exit the utility room, Officer Phillips began kicking the utility room's door. In response to Officer Phillips' kicking, the Appellant leaned against the door, pushing against it as to prevent law enforcement from entering the room. While Officer Philips kicked the utility room's door, law enforcement continued to command that the Appellant exit the utility room

with his hands raised. Shortly thereafter, the utility room's door failed, after which Officer Mooney activated his Taser and fired it at the Appellant, making contact. The Appellant was then taken into custody. Once the Appellant was apprehended, Sergeant Kreuter testified that the fire in the utility room either self-extinguished or had been put out. Evidence at trial also revealed that the utility room's door was heavily covered in black soot.

Pursuant to the March Incident, the Appellant was charged with one count of Criminal Attempt-Criminal Homicide[22], one count of Arson[23], one count of Aggravated Assault[24], one count of Risking Catastrophe[25], one count of Stalking[26], one count of Terroristic Threats[27], eleven counts of Recklessly Endangering Another Person[28], and one count of Resisting Arrest.[29] Thereafter, after the Commonwealth and Appellant agreed to have a single trial concerning the charges stemming from the January and March incidents. A bench trial was held on October 17 and October 18 of 2016 before the undersigned. On October 18, 2016, at the conclusion of trial, the Appellant was found guilty of all charges. Sentencing was deferred as this Court ordered a Pre-Sentence Investigation. This Court also ordered that Appellant receive a drug and alcohol evaluation as well as a mental health evaluation.

On January 13, 2017, Appellant was sentenced to a total period of incarceration of not less than twelve (12) years nor more than twenty-four (24) years which represented consecutive sentences for attempted arson, attempted criminal homicide, and arson.[30] On March 3, 2017, Appellant appeared before this court with respect to a post sentence motion seeking

---

[22] 18 Pa. Stat. and Cons. Stat. Ann. § 901 §§A
[23] 18 Pa. Stat. and Cons. Stat. Ann. § 3301 §§ A(1)(ii)
[24] 18 Pa. Stat. and Cons. Stat. Ann. § 2702 §§ A(1)
[25] 18 Pa. Stat. and Cons. Stat. Ann. § 3302 §§ B
[26] 18 Pa. Stat. and Cons. Stat. Ann. § 2709.1 §§A(1)
[27] 18 Pa. Stat. and Cons. Stat. Ann. § 2706 §§ (A)(1)
[28] 18 Pa. Stat. and Cons. Stat. Ann. § 2705
[29] 18 Pa. Stat. and Cons. Stat. Ann. § 5104
[30] For a more detailed explanation of Appellant's consecutive sentence, see footnote 13.

7

reconsideration of sentence. After a hearing on the matter, this Court denied Appellant's post sentence motion.

On March 19, 2017, through an intermediary named William Urban, Appellant contacted his counsel and requested that a direct appeal be filed with the Pennsylvania Superior Court. No timely direct appeal was filed. Thereafter, Appellant filed a *pro se* Post-Conviction Relief Act ("PCRA") petition on May 25, 2017. On October 16, 2017, counsel was appointed for Appellant. Counsel was directed to file an amended PCRA petition no later than November 29, 2017. After a series of extensions were granted, Appellant filed an amended PCRA petition on March 1, 2018. A hearing was scheduled with respect to Appellant's amended PCRA petition on April 27, 2018. Prior to the hearing and pursuant to an agreement by counsel, on April 23, 2018, this Court issued an Order granting Appellant's amended PCRA petition in part. We granted Appellant's amended PCRA petition insofar as we permitted Appellant to file a direct appeal *nunc pro tunc* from the judgments of sentence in the above-captioned cases. This Court denied Appellant's amended PCRA petition in all other respects.

On May 22, 2018, Appellant filed a Notice of Appeal to the Pennsylvania Superior Court from this Court's March 3, 2017 Order denying Appellant's post sentence motions. On June 13, 2018, Appellant filed his Concise Statement of Matters Complained of on Appeal (hereinafter "Concise Statement" or "Rule 1925(b) Statement"). Appellant asserts the following allegations of error as stated in his Concise Statement, which we set forth *verbatim* below:

1. Whether the evidence presented a trial was sufficient to establish the requisite intent to sustain a conviction for criminal attempt homicide, where the evidence failed to establish that Victim, Kathy Todd, was present him [sic] the home at the time the first [sic] was started.

8

2. Whether the evidence presented at trial was sufficient to establish the requisite intent to sustain a conviction for criminal attempt homicide, where Appellant's action were taken in an attempt to kill himself, and not Kathy Todd.

3. Whether the evidence presented at trial was sufficient to sustain a conviction for Arson, 18 Pa.C.S.A. § 3301(a)(1)(ii), where no one witnessed Appellant start a fire and the Commonwealth could not establish if anyone was present in the home at the time the fire was started.

We address each of Appellant's contentions below.

## DISCUSSION

For ease of discussion, we distill Appellant's contentions into the following categories: (1) Standard of Review, (2) Attempted Homicide, and (3) Arson.

### Standard of Review

As a preliminary matter, in reviewing the sufficiency of the evidence, the Court views all the evidence admitted at trial in the light most favorable to the verdict winner in determining whether there is sufficient evidence to enable the factfinder to establish every element of a crime beyond a reasonable doubt. Commonwealth v. Hansley, 2011 Pa. Super 129, 24 A.3d 410, 416 (2011) (internal citations omitted). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence as any doubts regarding a defendant's guilt may be resolved by the factfinder unless said evidence is so weak and inconclusive, that as a matter of law, no probability of fact may be drawn from the combined circumstances. Id. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or

9

none of the evidence. Id. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Id.

Attempted Criminal Homicide

In matter one, Appellant contends that the record is insufficient to sustain a conviction for attempted criminal homicide. In matter two, Appellant alleges that such a conviction is prohibited as a matter of law because Appellant's actions were taken in an attempt to kill himself rather than the victim, Kathy Todd. For the reasons set forth below, we find Appellant's contentions meritless.

The law of criminal attempt in this Commonwealth is well settled. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). For the Commonwealth to prevail in a conviction of attempted criminal homicide, it must prove beyond a reasonable doubt that the accused acted with a specific intent to kill and took a substantial step towards that goal. Commonwealth v. Robertson, 2005 Pa. Super 152, 874 A.2d 1200, 1207 (2005) (*citing* Commonwealth v. Hobson, 413 Pa. Super. 29, 32, 604 A.2d 717, 719 (1992).

Moreover, "a person acts intentionally with respect to a material element of an offense when...it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." Commonwealth v. Matthews, 2005 Pa. Super 92, 870 A.2d 924, 929 (2005) (internal citations omitted). Intent can be proven by direct or circumstantial evidence and it may be inferred from acts or conduct or from the attendant circumstances. Id. (*citing* 18 Pa.C.S.A. § 302(b)(1)). The defense of renunciation to a charge of criminal attempt requires a showing that

10

the defendant avoided the commission of the crime attempted by abandoning his criminal effort. Commonwealth v. Zingarelli, 2003 Pa. Super 424, 839 A.2d 1064 (Pa. Super. Ct. 2003).

In the instant case, when viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial was sufficient to prove the requisite elements of attempted criminal homicide. The record establishes that Appellant arrived at the residence in violation of both a protection from abuse order and the modified bail agreement pursuant to the January Incident, which required the Appellant have no inappropriate conduct with Kathy. Once he arrived at the residence, a violent episode ensued wherein the Appellant grabbed Kathy by the arms, dragged her to the basement, and began pummeling her body with his fists. While doing so, the Appellant claimed that Kathy was "done," that she was "dead," and that he was going to kill her. After a violent struggle, Kathy lost consciousness. When she awoke, she escaped from the residence.

Furthermore, once law enforcement arrived on scene, they observed numerous indicia that the Appellant was attempting to set the residence ablaze. Law enforcement observed scattered matches on the floor and smoke emanating from the basement stairwell along with a powerful odor of natural gas and smoke permeating throughout the residence. The kitchen's gas stove had two burners activated. On such burner was aflame while the other was merely leaking gas. Moreover, when members of law enforcement went outside in an attempt to shut off the gas main, law enforcement observed the gas main's handle was severely bent to prevent someone from turning off the gas. Finally the entire basement had severe fire and smoke damage. Sergeant Kreuter testified that once Appellant was apprehended, the fire emanating from the utility room either self-extinguished or was put out.

11

In light of the above, we believe Appellant's conduct constitutes a "substantial step" toward the intentional killing of Kathy. Not only did the Appellant intentionally manipulate the residence's gas lines to cause an explosion, the Appellant scattered matches throughout the home, threatened to kill Kathy, violently assaulted her rending her unconscious, and started a fire in the utility room causing severe smoke and fire damage throughout the residence. There is also not a scintilla of evidence to suggest that Appellant renounced his criminal efforts. We therefore believe the record sufficiently establishes that Appellant took substantial steps to deliberately set the residence ablaze in an effort to cause Kathy's demise and perhaps his own as well.

We also reject Appellant's contention that Appellant cannot be found guilty of attempted criminal homicide because his actions were taken in an effort to kill himself rather than the victim, Kathy. The evidence established that if Kathy had not regained consciousness and escaped the home, she likely would have died had the home been consumed by fire. Appellant's contention with regard to his suicidal motivation does not mitigate the underlying deliberate steps he took to kill Kathy.

We therefore reject Appellant's contentions and believe that the evidence in the record is clearly sufficient to justify the Appellant's conviction of attempted criminal homicide.

### Arson

In matter three, Appellant contends that the evidence of record is insufficient to sustain a conviction for arson because no one witnessed Appellant start a fire and the Commonwealth could not establish if anyone was present in the home at the time the fire was started. For the reasons set forth below, we believe Appellant's contention is without merit.

Pursuant to Pennsylvania law, to convict an individual for arson, the Commonwealth must establish that there was a fire, that the fire was of incendiary origin, and that the defendant was a guilty party. Commonwealth v. Leslie, 424 Pa. 331, 227 A.2d 900 (1967). Specifically, a

12

person commits arson if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another. 18 Pa. C.S. § 3301(a)(1)(ii). In arson cases, the *corpus delicti* consists of willful and malicious burning, which can be proved by circumstantial evidence. Commonwealth v. Patterson, 247 Pa. Super. 527, 372 A.2d 1214 (1977).

In the instant case, Appellant's contentions that he cannot be convicted of arson because no one witnessed Appellant start a fire and that the Commonwealth could not establish if anyone was present in the home at the time the fire was started are without merit. It is undisputed that a fire occurred at the residence on March 6, 2016. The record establishes that the Appellant deliberately tampered with the gas lines of the residence by ensuring that the gas main could not be shut off. Upon responding to an emergency call, law enforcement noticed the overwhelming odor of natural gas in the home with smoke emanating from the basement. The Appellant was apprehended in the residence's utility room where the door evidenced severe soot and smoke damage. Sergeant Kreuter also testified that a fire started in the same area where the Appellant barricaded himself. The basement also suffered severe smoke and fire damage.

Based upon both direct and circumstantial evidence, the elements of arson have been established in the record. First, there was clearly a fire in the residence that generated severe smoke and caused damage to the basement area of the home. Second, the fire was of incendiary origin, in that law enforcement observed scattered matches throughout the home, the gas main handle severely bent in an effort to prevent anyone from shutting it off, and the Appellant's statements toward Kathy indicating he was acting in a deliberate and calculating manner.

13

Finally, the Appellant was a guilty party in that he was the only individual in the home at the time law enforcement responded on scene, had threatened to and attempted to set the residence on fire during the January Incident, and was apprehended in the same area which suffered significant smoke damage. Arson was established, therefore, by substantial circumstantial evidence, rendering the absence of eye witness testimony as to Appellant's activity in starting the fire of no consequence. Based upon the foregoing, we believe that the Commonwealth sufficiently proved the elements required to sustain Appellant's conviction for arson beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, we suggest that the present appeal should be dismissed.

BY THE COURT:

Date: 7 | 19 | 2018

C. THEODORE FRITSCH, JR., J.

N.B. It is your responsibility
to notify all interested parties
of the above action.

14

*Commonwealth of Pennsylvania v. Joseph C. Todd*
*Bucks County Court of Common Pleas Criminal Division, CP-09-CR-0001429-2016, CP-09-CR-0003144-2016*

Copies To:

Riley Downs, Esquire
Office of the Public Defender
Bucks County Justice Center- First Floor
100 N. Main Street
Doylestown, PA 18901
 *Attorney for Appellant*

Monica Furber, Esquire
Office of the District Attorney
Bucks County Justice Center- Second Floor
100 N. Main Street
Doylestown, PA 18901
 *Attorney for Appellee*