COMMONWEALTH of Pennsylvania,
Appellee,

v.

Chaka MATTHEWS, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 2004.

Filed March 14, 2005.

Giovanni Campbell, Philadelphia, for appellant.

Jason Fetterman, Asst. Dist. Atty., and Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: DEL SOLE, P.J., HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, LALLY–GREEN, TODD, KLEIN and BOWES, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Chaka Matthews, appeals from the June 17, 2002 judgments of sentence entered in the Court of Common Pleas of Philadelphia County. For the following reasons, we find sufficient evidence of record to sustain Appellant's conviction for aggravated assault. However, we must vacate the sentences imposed on four of Appellant's convictions and remand for resentencing. The relevant facts and procedural history of this case are as follows.

¶ 2 On October 19, 2001, at approximately 4:30 a.m., Appellant was working with a crew of carpet installers at the Nine West shoe store in the Franklin Mills Mall. On this particular morning, Appellant argued with his supervisor, demanded to leave, and was ultimately escorted to his car by Dwayne O'Brien, a mall security guard. When O'Brien arrived at Appellant's car, he observed that the car was filled with boxes of Nine West shoes. O'Brien asked Appellant if he could produce receipts for the merchandise. In response, Appellant pushed O'Brien and entered the vehicle. O'Brien responded by spraying Appellant with pepper spray. Appellant then aimed his car directly at O'Brien, struck him and fled the scene. O'Brien sustained injuries to his thumb, knee and shin.

¶ 3 Minutes later, while operating his car on Interstate 95, Appellant lost control of his car and came to rest near a guardrail. George Wachter observed Appellant's crash and stopped his car in an attempt to render aid to Appellant. Mr. Wachter observed Appellant lying unconscious on the front seat and pulled Appellant from the smoking car. In an effort to wake Appellant, Mr. Wachter struck Appellant on the chest and yelled at him. Mr. Wachter noticed that Appellant held a bottle of pills in his hand and placed the pill bottle in the car. When Appellant finally awoke, he said to Mr. Wachter, "Are you a cop, man? Are you a fucking cop?" During this questioning, Appellant also touched Mr. Wachter's chest. Mr. Wachter replied that he was only there to help Appellant. Mr. Wachter also observed that Appellant was very agitated, was sweating profusely and was scratching his own face. Appellant continued to persist in this questioning, and Mr. Wachter responded that he was trying to save Appellant's life. At that moment, Appellant pushed a revolver into Mr. Wachter's throat. Mr. Wachter began to retreat backwards, and Appellant continued the questioning. Mr. Wachter testified that, at this time, he could hear passing motorists screaming. Appellant then took the gun away from Mr. Wachter's throat, continued to point the gun at Mr. Wachter and began rummaging through the car. Periodically, while gathering items from the car, Appellant looked up at Mr. Wachter and pointed the gun at him.

¶ 4 After stashing a number of objects into his sweatshirt, Appellant ran to a guardrail located twenty yards from the rear of his vehicle. Appellant doubled

over the guardrail, then ran back to the car to continue his frantic search. While searching, Appellant periodically pointed the gun at Appellant. When a second passerby stopped at the scene, Appellant yelled to Mr. Wachter, "Mother fucker, you're fucking dead. I'm going to fucking kill you." Appellant then leapt over the guardrail and fled. Mr. Wachter testified that, during this encounter, he feared for his life. Additionally, he testified that Appellant uttered to him, between seven to ten times, that he was going to kill him. He further explained that, throughout the encounter, Appellant kept the gun on him "the whole time." N.T. 5/6/02, at 42. Mr. Wachter stated that, every time Appellant briefly turned to look for something, he tried to dial 911 on his cell phone. Mr. Wachter testified that he finally reached the 911 dispatcher but could not speak because he was afraid that Appellant would shoot him.[1]

¶ 5 On October 20, 2001, the Commonwealth charged Appellant with, *inter alia*, retail theft, theft by unlawful taking and receiving stolen property[2] stemming from Appellant's alleged theft of the store's merchandise. The Commonwealth also charged Appellant with aggravated assault, graded as a felony of the second degree, and simple assault[3] as a result of Appellant's interaction with the security guard, Dwayne O'Brien. Finally, the Commonwealth charged Appellant with aggravated assault, graded as a felony of the first degree, simple assault, terroristic threats, possessing an instrument of crime and weapons violations stemming from Appellant's involvement with the motorist, George Wachter.[4]

¶ 6 The case proceeded to a bench trial, and on May 6, 2002, the trial court convicted Appellant of each of the aforementioned offenses. On June 17, 2002, the trial court sentenced Appellant to two and one-half to five years' imprisonment on the aggravated assault conviction (Dwayne O'Brien), two and one-half to five years' imprisonment on the retail theft conviction, five to ten years' imprisonment on the aggravated assault conviction (George Wachter), two and one-half to five years' imprisonment on the terroristic threats conviction, and three and one-half to seven years' imprisonment for carrying a firearm without a license. The trial court informed Appellant that each of these sentences would be served concurrently. Additionally, the trial court suspended Appellant's sentence on the convictions for theft by unlawful taking, possessing an instrument of crime (Dwayne O'Brien), possessing an instrument of crime (George Wachter) and carrying a firearm on the streets. The trial court determined that Appellant's remaining convictions merged for sentencing purposes. Appellant filed timely post-sentence motions, which the trial court denied on July 19, 2002. Appellant filed a timely notice of appeal and a concise statement of matters complained of as directed by the trial court.

¶ 7 In his brief, Appellant raises one issue for our review:

1. Was not the evidence insufficient to support the conviction for aggravated assault, graded as a felony of the

---

1. Officer David Novak of the Philadelphia Highway Patrol also testified that he searched the embankment where Appellant fled and discovered a loaded .40 caliber handgun. N.T. Trial, 5/6/02, at 70.

2. 18 Pa.C.S.A. §§ 3929, 3921 and 3925, respectively.

3. 18 Pa.C.S.A. § 2702 and § 2701, respectively.

4. 18 Pa.C.S.A. § 2702(a)(1), 2701, 2706, 907, 6106 and 6108, respectively.

first degree, inasmuch as [A]ppellant did not take a substantial step towards specifically committing serious bodily injury nor did he act under circumstances manifesting an extreme indifference to the value of human life when he merely pointed a gun and made threats to complainant?

Appellant's Brief, at 4.

¶ 8 In his sole issue, Appellant contends that the Commonwealth presented insufficient evidence to sustain his conviction for aggravated assault under Section 2702(a)(1) (attempting to cause serious bodily injury to Mr. Wachter). Appellant's Brief, at 9. Specifically, Appellant asserts that the Commonwealth failed to establish that he possessed the specific intent to inflict serious bodily injury upon Mr. Wachter or that he took a substantial step toward inflicting such injury. *Id.* Although the Commonwealth presented evidence that Appellant pointed a loaded handgun at Mr. Wachter and threatened him with his life, Appellant emphasizes that he fled the scene of his own volition and did not follow through with his threats. *Id.* Appellant argues that his flight from the scene demonstrated that he only intended to frighten Mr. Wachter, not to inflict serious bodily injury. *Id.*

■■■ ¶ 9 When reviewing a sufficiency claim, we employ the following standard of review:

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Nahavandian,* 849 A.2d 1221, 1229–30 (Pa.Super.2004) (citations omitted). Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Robinson,* 817 A.2d 1153, 1158 (Pa.Super.2003), quoting *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000). However, "the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." *Id.,* quoting *Commonwealth v. Scott,* 409 Pa.Super. 313, 597 A.2d 1220, 1221 (1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id.*

■■■ ¶ 10 Under the Crimes Code, a person may be convicted of aggravated

assault, graded as a felony of the first degree, if he/she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Further, the Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. § 2301. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gruff*, 822 A.2d 773, 776 (Pa.Super.2003), *appeal denied*, —— Pa. ——, 863 A.2d 1143 (2004), citing *Commonwealth v. Galindes*, 786 A.2d 1004, 1009 (Pa.Super.2001), *appeal denied*, 569 Pa. 691, 803 A.2d 733 (2002). "A person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result." *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 186 (1993), *appeal denied*, 535 Pa. 657, 634 A.2d 220 (1993), quoting 18 Pa.C.S.A. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Gruff*, 822 A.2d at 776, quoting *Commonwealth v. Roche*, 783 A.2d 766, 768 (Pa.Super.2001), *appeal denied*, 568 Pa. 736, 798 A.2d 1289 (2002). Accordingly, we recognize that "[i]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Id.*

¶ 11 When evaluating whether the Commonwealth presented sufficient evidence to demonstrate an attempt to inflict serious bodily injury, our Court has established some bright line rules. First, our Court has definitively stated that we cannot sustain a conviction for aggravated assault where the Commonwealth only demonstrates that the defendant pointed a gun at someone. *See Commonwealth v. Savage*, 275 Pa.Super. 96, 418 A.2d 629, 632 (1980). This action alone is more properly characterized as a simple assault, namely, an "attempt by physical menace to put another in fear of imminent serious bodily injury." *Id.* citing 18 Pa.C.S.A. § 2701(a)(3). Second, in instances where the defendant has both drawn and fired (or drawn and misfired) a gun, we have consistently held that an aggravated assault occurred. *See Commonwealth v. Chance*, 312 Pa.Super. 435, 458 A.2d 1371, 1374 (1983); *Commonwealth v. Bond*, 261 Pa.Super. 311, 396 A.2d 414, 416 n. 2 (1978); *Commonwealth v. McCalman*, 795 A.2d 412, 415 (Pa.Super.2002), *appeal denied*, 571 Pa. 705, 812 A.2d 1228 (2002). Third, in instances where the defendant draws a weapon, threatens to use it on the victim and is prevented from doing so by the physical intervention of another actor, we have found that the Commonwealth presented sufficient evidence to demonstrate that the appellant took a substantial step, with the required specific intent, to perpetrate a serious bodily injury upon another. *See Commonwealth v. Elrod*, 392 Pa.Super. 274, 572 A.2d 1229, 1232 (1990), *appeal denied*, 527 Pa. 629, 592 A.2d 1297 (1990) (sustaining the defendant's conviction for aggravated assault where the defendant drew a knife, threatened to stab his victim in the vagina and to cut off her breasts, and ran the knife along the victim's body before a passerby intervened to prevent the attack); *Commonwealth v. Smith*, 426 Pa.Super. 144, 626 A.2d 614, 620 (1993) (finding sufficient evidence to sustain the defendant's conviction for aggravated assault where the defendant entered his

wife's workplace, pointed a .25 caliber pistol at her face and head, threatened to kill her and only stopped his assault when one of his wife's co-workers intervened); *Sanders,* 627 A.2d at 187 (sustaining the defendant's conviction for aggravated assault where the defendant approached a man in a bar; placed a gun to the man's head, informed the man that he intended to shoot him in the head, and was only prevented from doing so when the victim and another man wrestled the gun from the defendant's hand).

¶ 12 Our review of the record reveals, however, that the instant case does not fit neatly within any of the aforementioned categories. The Commonwealth has not demonstrated that Appellant fired or attempted to fire the weapon or that a third party physically restrained Appellant thereby preventing him from following through with his threats. On the other hand, the Commonwealth did not solely rely upon evidence that Appellant pointed a gun at the victim. Instead, we confront a situation where the defendant draws a loaded firearm, presses the weapon into the victim's throat, verbally threatens the victim with his life, and does not follow through with his threats despite an ample opportunity to do so. In cases of this kind, our Court has adopted two distinct and irreconcilable approaches as amplified in the decisions of *Commonwealth v. Mayo,* 272 Pa.Super. 115, 414 A.2d 696 (1979) and *Commonwealth v. Gruff, supra.*

¶ 13 In *Mayo,* the victim testified that she lived in a basement apartment with her daughter and a roommate. One afternoon, the victim received a call from the defendant who inquired about the whereabouts of her roommate. When the victim answered that she did not know where her roommate was, the defendant stated that he was on his way to the apartment. When the defendant and another man ar-

rived, the victim refused to open the door. The defendant and his friend forced their way in and sat down in the apartment. Moments later, the victim accused the defendant of stealing her wallet. The defendant grabbed the victim by the hand and forcibly led her to the kitchen. He pulled a six-inch steak knife from the dish rack, held it to the victim's throat and said, "Do you know what I do to people that accuse me of doing things that I don't do? ... I kill them." The defendant then scratched some letters onto the victim's chest with the knife. The defendant and his friend then took the victim into the bedroom and took turns raping her. Based upon the evidence, a jury convicted the defendant of aggravated assault. On appeal, the defendant challenged the sufficiency of the evidence to sustain a conviction under Section 2702(a)(4) (attempting to cause or intentionally or knowingly causing bodily injury with a deadly weapon). First, our Court concluded that the Commonwealth did not present sufficient evidence to sustain a conviction for aggravated assault, causing bodily injury with a deadly weapon, because the "light" scratches on the victim's chest would not qualify as bodily injury. Second, we concluded that the evidence of record did not establish the defendant's *intent* to inflict bodily injury with a deadly weapon. In so holding, we stated:

> Although Appellant was certainly more physically powerful than his victim, and at least suggested the possibility of her death, we view the crucial fact to be his failure to pursue his obvious opportunity to inflict considerable pain and injury on [the victim]. Appellant's actions all point decisively to an intent not to inflict bodily injury, but to frighten and humiliate [the victim], a design which was in fact eminently successful.... [W]hile we quite agree that [the victim] was placed in considerable fear, this is simply not

sufficient to sustain a conviction for aggravated assault.

*Id.* at 703.

¶ 14 In *Mayo,* our Court hinged its determination of whether the Commonwealth presented sufficient evidence to establish the defendant's intent to inflict bodily injury upon whether the defendant availed himself of the opportunity to inflict bodily injury. Since the defendant did not follow through with his threat and had the opportunity to do so, the *Mayo* court concluded that a fact-finder could not infer that the defendant possessed the requisite intent to cause injury.

¶ 15 Our Court has recently endorsed the *Mayo* court's "ample opportunity" approach in another case involving the sufficiency of the evidence to sustain an aggravated assault conviction. In *Commonwealth v. Repko,* 817 A.2d 549 (Pa.Super.2003), Kathy Hiller, George Hiller, Jason Murtha and Melissa Bench became involved in an argument with the defendant at a bar. The police arrived at the bar and escorted the defendant home. Later that evening, George Hiller informed the others that he intended to visit the defendant's home to continue the argument. Ms. Hiller and Ms. Bench drove to the defendant's home in an effort to try to diffuse the situation. When the women pulled into the defendant's driveway, the defendant met the women's vehicle. From a distance of twenty-five feet, the defendant pointed a gun at Ms. Bench and told her to leave his property or he would shoot her in the head. Ms. Bench complied and walked down to the road. At some later point, Ms. Bench walked back down the defendant's driveway. The defendant again pointed the gun at Ms. Bench and threatened to shoot her. Ms. Bench walked to the roadway and flagged down a police officer.

¶ 16 A jury found that the defendant did commit an aggravated assault upon Melissa Bench under subsection 2702(a)(4) (intent to cause bodily injury to another with a deadly weapon). However, on appeal, a panel of our Court determined that the Commonwealth had not presented sufficient evidence to prove that the defendant intended to cause bodily injury. Rather, our Court concluded that the defendant's verbal and physical actions demonstrated his intent to frighten or scare Ms. Bench away from his home, rather than the intent to inflict bodily injury. In so holding, we noted that the defendant never fired his weapon despite ample opportunity to do so.

¶ 17 In *Commonwealth v. Gruff, supra,* we declined to employ the "ample opportunity" analysis advanced fourteen years earlier in *Mayo* and relied upon three months earlier in *Repko.* Therein, the victim testified that he was walking home from a neighbor's house when the defendant accosted him. The defendant grabbed the victim from behind and brought a loaded rifle equipped with a bayonet up toward the victim until the bayonet touched his neck. The defendant then said, "You're one of them, ain't you?" and repeated this expression two or three times. The defendant then stated, "I just ought to kill you ... Do you want to die today or tomorrow?" The victim responded that he did not want to die at all. After a few moments, the victim no longer felt the bayonet on his neck and escaped into the woods. The defendant made no attempt to hold onto the victim or to fire a shot at the victim as he ran off. A jury convicted the defendant of attempting to cause serious bodily injury. On appeal, we affirmed the conviction. In doing so, we emphasized that a substantial step for the purposes of a conviction under Section 2702(a)(1) can involve little or no injury to

the victim. Furthermore, we concluded that the intent to inflict serious bodily injury can be inferred in the instant case from the defendant's words and conduct. Specifically, we held:

> The record reflects that Appellant took a substantial step since the bayonet touched the victim's neck. The record also reflects an intent to seriously injure. Here, Appellant's words and conduct conveyed a present intent to kill. Also, Appellant did not release the victim; rather, the victim escaped. *The fact that Appellant did not pursue the victim does not dissipate the fact that the circumstances at the critical moment were such that a jury could conclude that Appellant had an intent to cause serious bodily injury and an intent to cause bodily injury with a deadly weapon.*

*Id.* at 780 (emphasis added).

¶ 18 Upon our reading of *Mayo* and *Gruff,* we conclude that the decisions express divergent views on the effect of a defendant's failure to avail himself of an ample opportunity to follow through with his threats. The *Mayo* court made the existence of this factor determinative of the analysis. As stated in *Mayo* and as adopted in *Repko,* the Commonwealth cannot demonstrate that a defendant intended to inflict serious bodily injury if the defendant possessed ample opportunity to inflict the injury but elected to do otherwise. The *Gruff* court, however, recognized that a defendant's failure to avail himself of an opportunity to inflict serious bodily injury is not dispositive but merely one circumstance to be considered in the totality of the circumstances. The *Gruff* decision concluded that Mr. Gruff's failure to follow through with his threat once his victim fled, despite ample opportunity to pursue the victim or to shoot him, should not prevent the fact-finder from finding that the defendant possessed the requisite intent to inflict serious bodily injury at the moment when he drew the weapon and issued the grave threats.

¶ 19 After our examination of these opinions, we reject the *Mayo* court's determination that the Commonwealth cannot establish a defendant's intention to cause serious bodily injury when the defendant merely declines to inflict such injury despite the opportunity. While a defendant's failure to follow through with a threat may permit the fact-finder to conclude that a defendant only intended to frighten, and never possessed the intent to commit serious bodily injury, it may also permit the fact-finder to infer that the defendant possessed the intent and, under the circumstances, changed his mind. If the remaining circumstantial evidence of record, when viewed in the light most favorable to the Commonwealth, would permit the fact-finder to reach the latter conclusion, we may not reweigh the evidence and substitute our judgment for the fact-finder. *See Nahavandian, supra* (stating that "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances" and that "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence").

¶ 20 Furthermore, were we to endorse the *Mayo* approach, we would essentially limit the Commonwealth's ability to prove the offense of aggravated assault (attempting to cause serious bodily injury) to those instances where a defendant either unsuccessfully employs a weapon or where a third party physically restrains a defendant from employing the weapon. Such a limitation is untenable, in our view, because it would not permit a fact-finder to

infer that the defendant's own threatening statements and actions are indicative of his subjective intent at that moment. Thus, to the extent that *Mayo* and *Repko* stand for the proposition that the Commonwealth presented insufficient evidence of the defendant's intent, as a matter of law, where the defendant does not avail himself of the opportunity to follow through with the threats, we overrule them.

¶ 21 We find in the instant case that the Commonwealth presented sufficient evidence of record for the fact-finder to infer that Appellant possessed the intent to inflict serious bodily injury. Appellant shoved a loaded firearm into the throat of an unsuspecting motorist, continued to restrain the motorist throughout the encounter by pointing a loaded firearm at him, and expressed his present intent to kill between seven to ten times during their encounter. Further, the record shows that Appellant only ended the encounter after a third party arrived at the scene of the crash. The act of placing a loaded firearm against the victim's throat and continuing to point the loaded firearm at him while he searched the car constituted a substantial step toward the infliction of serious bodily injury. *See Sanders, supra* (finding that the appellant had taken a substantial step toward perpetrating serious bodily injury where the appellant threatened to shoot the victim in the head and then placed a gun to the victim's head). Furthermore, there is no question that the infliction of a gunshot wound to the victim's throat would cause serious bodily injury. *See* 18 Pa.C.S.A. § 2301. Finally, Appellant's repeated expressions of his present intent to kill, when viewed in concert with his own actions, would permit the fact-finder to infer that Appellant possessed the requisite intent to inflict serious bodily injury during the encounter. *See Gruff, supra* (finding that the fact-finder could reasonably infer that the appellant possessed the intention to inflict serious bodily injury during the encounter where he placed a bayonet to the victim's throat and uttered grave threats, even though the appellant inexplicably failed to avail himself of the opportunity to follow through with his threats once the victim began to flee) *but see Commonwealth v. Bryant*, 282 Pa.Super. 600, 423 A.2d 407, 410–11 (1980) (finding insufficient evidence existed to sustain an aggravated assault conviction under Section 2702(a)(1) where the defendant held a victim at gunpoint, during a robbery, after uttering the conditional threat that if he did not "get some stuff out of this place ... (there would be) some dead honkies laying around") *and Robinson*, 817 A.2d at 1160–61 (finding insufficient evidence to demonstrate that the defendant intended to inflict serious bodily injury where the defendant struck the victim once in the back with a handgun during a robbery and where there was "no indication the blow was delivered for any purpose other than to assist in separating the backpack from [the victim's] clutches"). Finding sufficient evidence of record to sustain Appellant's conviction for aggravated assault under Section 2702(a)(1), we affirm Appellant's judgment of sentence.

¶ 22 Nevertheless, we must remand this case for resentencing upon our determination that the trial court imposed four illegal sentences. *Commonwealth v. Kitchen*, 814 A.2d 209, 214 (Pa.Super.2002), *appeal denied*, 576 Pa. 229, 839 A.2d 184 (2003) (stating that the legality of a sentence is never waived and may be the subject of an inquiry by an appellate court *sua sponte*). At sentencing, the trial court imposed suspended sentences for Appellant's convictions for theft by unlawful taking, possessing an instrument of crime (Dwayne O'Brien), possessing an instrument of crime (George Wachter) and

carrying a firearm on a public street. It is well settled in this Commonwealth that indefinitely suspended sentences are illegal sentences that serve no valid purpose. *See Commonwealth v. Khorey,* 347 Pa.Super. 171, 500 A.2d 462, 465 (1985), *appeal denied,* 521 Pa. 1, 555 A.2d 100 (1989); *Commonwealth v. Hamilton,* 339 Pa.Super. 1, 488 A.2d 277 (1985); *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985). As such, a district justice or trial judge lacks the authority to impose such a sentence. *See* 42 Pa.C.S.A. § 9721(a) (outlining the six sentencing alternatives available to a sentencing judge). Upon remand, we instruct the trial court to fashion a sentence for these convictions that is among the various alternatives outlined in Section 9721.

¶ 23 Judgments of sentence affirmed in part and vacated in part. Remanded for resentencing. Jurisdiction relinquished.

¶ 24 KLEIN, J., files Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that the conviction for aggravated assault on victim George Wachter should be affirmed. However, I reach this conclusion by finding that the facts of the instant case are distinguishable from the factual scenarios found in *Mayo* and *Repko* and are more like those in *Gruff.*

¶ 2 As the facts are distinguishable, it is proper to sustain the convictions without overruling *Mayo* and *Repko.* Therefore, the continued validity of those cases is not squarely before us and it is essentially dictum to say that they were incorrectly decided. As the *Mayo* principle has been

the law for twenty-five years, I do not think it appropriate to reverse it in what turns out to be dictum.

¶ 3 I also see no need to remand for resentencing. No one raised the problem of these "suspended sentences," so I would not address the issue, and even if I were to address the issue I would merely vacate the sentences, since the judge either meant "guilty without further penalty" or the sentence was illegal.

### 1. *Mayo* should be distinguished, not overruled.

*Mayo* and *Repko* are distinguishable from *Gruff.* *Mayo* and *Repko* discuss the situation where there is merely a pointing of a weapon and threats, with no major injury caused. The Defendant then abandons the assault on his or her own with nothing intervening. In this circumstance, generally there is not enough to conclude that the defendant intended to cause serious bodily harm rather than merely scaring the victim. In *Mayo,* while there were minor scratches on the victim's chest, these scratches were considered to be more a part of a threat to facilitate the rape than an attempt to commit bodily injury with a deadly weapon.[5] No outside factor stopped Mayo from carrying out the threat. Likewise, there was nothing to stop Repko from shooting the police officer. He just did not pull the trigger.

¶ 4 The distinction in *Gruff* is that after Gruff placed a bayonet against the victim's neck and made a threat, the victim escaped. The Court said the fact that Gruff did not shoot the victim as he ran away did not eliminate the possibility that he had the requisite intent but it was thwarted when the victim escaped.[6]

---

5. Definition of aggravated assault, 18 Pa.C.S. § 2702(a)(4).

6. One possible explanation is that a gun shot can be heard, thus drawing attention to the

¶ 5 In *Gruff*, the majority authored by Judge Maureen Lally–Green laid out a logical four-prong test to determine whether or not intent to cause serious bodily injury can be inferred beyond a reasonable doubt.

First, the resolution of each case is the function of the circumstances of the case as determined by the factfinder.

Second, a substantial step for purposes of aggravated assault—attempt under §§ 2702(a)(1) or (a)(4) can involve little or no injury to the victim.

Third, we view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom.

Fourth, with respect to the intent requirement of each section, we examine the defendant's words and conduct to determine whether the record supports a finding of the requisite intent.

822 A.2d at 779–80 (citations omitted).

¶ 6 In the instant case, the factfinder did determine that there was sufficient evidence to infer intent from the use of a weapon, coupled with threats and other circumstances. Like *Gruff*, the defendant was interrupted, first by another motorist coming by, and second, by the fact that the victim was on a cell phone trying to reach the police before Matthews fled. Moreover, the fact that Matthews could be viewed as trying to run over the security officer as he drove his car from the Mall supports a finding that Matthews was certainly willing to cause injury in the course of this criminal activity and so intended to inflict serious bodily injury on Wachter. The intent was simply thwarted by the

arrival of the other motorist and Wachter's use of the cell phone.

¶ 7 I would therefore affirm on the basis that this case is distinguishable from *Mayo* and *Repko* and other cases where a defendant was not interrupted in his criminal activity. I also believe that the *Gruff* test is a good one and that under that test, the convictions for aggravated assault can logically be affirmed in *Gruff* (and the instant case) but not in *Mayo* and *Repko*. Because the results of *Mayo* and *Repko* would not be altered under the *Gruff* analysis, I see no irreconcilable approaches between *Mayo* and *Gruff*, and so I see no need to overrule *Mayo*.

¶ 8 Although I differ from the majority in my approach and analysis of this issue, I agree with the outcome. Accordingly, I concur with the majority on this point.

2.  **There is no need to remand the other four charges for resentencing.**

¶ 9 In this case it seems that the distinguished trial judge, Judge Gwendolyn N. Bright, was following the common practice of many judges by saying "sentence suspended" while meaning "guilty without further penalty." While technically improper, this nomenclature has been common in Philadelphia County for at least thirty years.[7] Otherwise, such a sentence would be illegal as an indefinite suspended sentence.

¶ 10 I agree with the statement made twenty years ago in *Commonwealth v. Tessel*, 347 Pa.Super. 37, 500 A.2d 144, 153 (1985), in the concurring opinion of Judge Phyllis Beck in a similar situation. She said:

Use of suspended sentences in this Commonwealth has been subject to varying

---

perpetrator, while stabbing or cutting someone with a bayonet makes no sound.

7.  I shudder to think of how many such illegal sentences I imposed in my 28 years as a trial judge in Philadelphia.

**936**

interpretations. In my view it would be best to have the issue squarely before the court and briefed before determining whether to abandon its use ... I therefore would refrain from deciding the issue since it was not raised by the parties.

¶ 11 Were I to reach the issue, I would simply vacate the sentence and not suspend it. That is what the majority did in *Tessel, supra.* In a footnote, the majority pointed out that either the trial judge intended to impose guilt without penalty, which is permitted, or imposed an indefinite suspended sentence, which is illegal.[8] In either case, it is not necessary or proper to sentence again on these charges.

¶ 12 Therefore, I concur in affirming the conviction for aggravated assault and dissent from the order remanding the other four charges for resentencing.

---

8. In the footnote, the majority stated, "Moreover, a trial court that imposes a "suspended sentence" may mean to impose one of two entirely different penalties. The court may mean to impose "indefinite probation," which, because it is not a sanctioned alternative, must be vacated. (*citation omitted*) Or the court may mean to impose 'guilt without further penalty,' which *is* a sanctioned penalty. We should not be required to remand to the trial court to determine what sentence was intended." 500 A.2d at 152, fn. 14.