J-S45007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
     :   PENNSYLVANIA
     :
v.      :
     :
     :
     :
ANTHONY BRIGHT      :
     :
     Appellant      :   No. 1290 EDA 2022

Appeal from the Judgment of Sentence Entered December 9, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004886-2019

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
     :   PENNSYLVANIA
     :
v.      :
     :
     :
     :
ANTHONY BRIGHT      :
     :
     Appellant      :   No. 1291 EDA 2022

Appeal from the Judgment of Sentence Entered December 9, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004887-2019

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                 **FILED MARCH 1, 2023**

Appellant, Anthony Bright, appeals from the judgment of sentence entered on December 8, 2021, following his jury trial convictions for strangulation, unlawful restraint, terroristic threats, possession of an

instrument of crime and two counts each of simple assault and aggravated assault.[1] We affirm.

We briefly set forth the facts and procedural history of this case as follows. On April 1, 2018, at 12:55 a.m., police responded to a Montgomery County residence after receiving a domestic violence report. When the police arrived, they encountered a female victim who was visibly shaken with a swollen lip. The victim told authorities that Appellant, her ex-boyfriend who still lived with her, kicked in her locked bedroom door, pushed her onto a bed, straddled her, and punched her several times in the face following a verbal argument. When the victim demanded Appellant leave the residence, he refused. When the victim tried to escape, Appellant slammed her against a wall. Eventually, the victim escaped to a neighbor's house where the neighbor called the police. The victim later accompanied the police to the station house and provided a statement. After returning home, the victim changed the locks at her residence. The next morning, the victim obtained a temporary order for the Protection From Abuse (PFA) against Appellant.

Later in the evening of April 1, 2018 around 9:10 p.m., Appellant called the victim. Appellant asked the victim what she had told the police and told her that he was coming to her residence to retrieve his work clothes. In a subsequent call, the victim informed Appellant that she had obtained a PFA against him and told him to stay away. Appellant became agitated and

_____

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2902(a)(1), 2706(a)(1), 907(a), 2701(a)(1) (two counts), 2702(a)(1), and 2702(a)(4), respectively.

threatened the victim, telling her that "she was going to pay for that." Fearing for her safety, the victim packed a bag and left the residence to stay with a friend. She encountered Appellant standing in the alleyway behind the residence. When the victim tried to flee, Appellant tackled her and choked her with both hands until the victim lost consciousness, despite her attempt to free herself by intentionally urinating. The victim regained consciousness on the floor in the basement of her residence and thwarted Appellant's attempt to choke her with the string from her sweatshirt. Appellant took a metal file from a workbench and struck the victim on her arms and back while the victim tried to protect her head. The victim eventually escaped, but once outside Appellant put his hand over the victim's mouth and his arm around her neck until she passed out. When the victim regained consciousness, she was on the ground outside by herself. The victim then drove to the police station to report the incident. The police observed that the victim had a swollen forehead, lip, and tongue, a bloody nose, red marks on both sides of her neck, lacerations on both knees and elbows, and large red marks at the top of her back. The police transported the victim to Abington Memorial Hospital. Upon subsequent surveillance of the scene, police discovered a pool of blood outside of the basement and on the door and a welcome mat. Police arrested Appellant.

Following a five-day trial commencing on August 31, 2021, the jury convicted Appellant of the aforementioned crimes. On December 9, 2021, the

trial court imposed an aggregate sentence of nine-and-one-half to 19 years of imprisonment. This timely appeal resulted.[2]

On appeal, Appellant raises the following issues for our review:

1. Whether the trial court abused its discretion in refusing to allow questions into potential jurors' qualifications based on their responses on the questionnaires that indicated that they may not be able to be fair and impartial?

2. Whether there was sufficient evidence presented at trial to sustain Appellant's conviction for aggravated assault under 18 Pa.C.S.[A.] § 2702(a)(1) where the victim lost consciousness and was left bloodied and bruised but Appellant did not cause or attempt to cause permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ?

3. Whether there was sufficient evidence presented at trial to sustain Appellant's conviction for aggravated assault with a deadly weapon under 18 Pa.C.S.[A.] § 2702(a)(4) where Appellant smacked the victim with a metal file in the arms and back?

4. Whether there was sufficient evidence presented at trial to sustain the jury's finding that [] Appellant was "subject to" a protection from abuse order under 18 Pa.C.S.[A.] § 2718(d)(3)(i) where he was not served with the order and the victim merely mentioned it to him?

5. Whether the trial court abused its discretion when it sentenced Appellant to an aggregate of [nine-and-one-half] to 19 years

_____

[2] Appellant filed timely post-sentence motions. On April 13, 2022, the trial court denied relief. On May 6, 2022, Appellant filed a notice of appeal. By order entered on May 10, 2022, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension, Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 11, 2022.

of incarceration when it focused only on the crime and not the rehabilitative needs of [] Appellant?

Appellant's Brief at 7-8.

In his first issue presented, Appellant claims that the trial court abused its discretion when it precluded defense counsel's efforts to ask potential jurors about their responses to a written questionnaire which differed from their oral responses later given in open court indicating that they could be fair and impartial. *Id.* at 35-47. More specifically, Appellant argues that the trial court denied defense counsel "an opportunity to determine if prospective jurors should be struck for cause when it precluded [defense counsel] from inquiring into their responses on the [initial] questionnaires." *Id.* at 39. Appellant asserts that defense counsel "merely wanted to question them because their questionnaires indicated that they might not be able to be fair and impartial." *Id.* at 41. Three potential jurors "responded on their confidential questionnaire that they would be more likely to believe the testimony of a police officer" and another potential juror "stated on [his or her] questionnaire that [he or she] had a disability that would interfere with their ability to serve as a juror." *Id.* at 43. Appellant suggests the trial court erred by denying requests to strike potential jurors for cause by "repeatedly explaining" to the venire, in open court while they were under oath, that their oral answers to additional questioning by the court "controls … regardless of the answers they provided on the questionnaire." *Id.* at 40; *see also id.* at 36 (record citation omitted) ("The trial court here explicitly told the venire that '[t]he only responses that count are the responses given now under oath in

this courtroom in the presence of the defendant and the attorneys.'"). Appellant claims that Pa.R.Crim.P. 632, mandates consideration of the standard, confidential juror information questionnaire and the trial court was required to permit Appellant to supplement the court's oral examination with further inquiry. *Id.* at 36; *see also id.* at 38 ("Presumably, the court here could not be bothered with allowing further inquiry into the potential jurors' qualifications because it would have taken up more time."). Appellant contends that he is entitled to a new trial as a result. *Id.* at 47.

This Court has observed:

> The single goal in permitting questioning of prospective jurors is to provide the accused with a competent, fair, impartial and unprejudiced jury. However, it is not intended to provide appellant with a better basis upon which to utilize his peremptory challenges. The inquiry should be strictly confined to disclosing qualifications or lack of qualifications and should focus on whether a juror has formed a fixed opinion as to an accused's guilt or innocence. Furthermore, the scope of *voir dire* rests in the sound discretion of the trial judge and his or her decisions will not be reversed unless palpable error is established.

*Commonwealth v. Hathaway*, 500 A.2d 443, 447 (Pa. Super. 1985) (citations omitted).

Moreover, our Supreme Court has stated:

> A criminal defendant's right to an impartial jury is explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution. The jury selection process is crucial to the preservation of that right. …
>
> It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other

reasons for disqualification. Thus[,] the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion.

*Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016), *quoting*

*Commonwealth v. Ingber*, 531 A.2d 1101, 1102–1103 (Pa. 1987) (internal

quotations and citations omitted). Stated another way, "the test of

disqualification is the juror's ability and willingness to eliminate the influence

of his scruples and render a verdict according to the evidence. This

determination is to be made by the trial judge based on the juror's answers

and demeanor and will not be reversed absent a palpable abuse of discretion."

*Penn*, 132 A.3d at 502, *citing* *Commonwealth v. DeHart*, 516 A.2d 656,

663 (Pa. 1986); *see also Commonwealth v. Chambers*, 685 A.2d 96, 107

(Pa. 1996) ("[A] trial judge may properly refuse to excuse a juror for cause

when the judge believes that the juror would be fair and impartial.").

Pennsylvania Rules of Criminal Procedure 631 and 632 govern the

examination and challenges of trial jurors. Initially, jurors complete a written,

standard, confidential juror information questionnaire. *See* Pa.R.Crim.P. 632;

*see also* Pa.R.Crim.P. 631(E). Thereafter, "[t]he judge may permit the

defense and the prosecution to conduct [further oral] examination of prospective jurors or the judge may conduct the examination … **as the judge deems proper**." Pa.R.Crim.P. 631(E) (emphasis added). As explained by our Supreme Court, in an opinion announcing the judgment of the Court:

> The Rules of Criminal Procedure permit trial courts to use juror information questionnaires in conjunction with the examination of prospective jurors. [Pa.R.Crim.P. 631(D).] The comments to the Rules indicate that the questionnaire serves to facilitate and expedite *voir dire* and that it is to be used as an aid in the oral examination of jurors. The comments explain that the questionnaires, which provide the judge and attorneys with basic background information about the jurors, eliminate the need for many commonly asked questions but are to be used in conjunction with and not as a substitute for oral examination. The comments further add that while nothing in the rules is intended to preclude oral questioning during *voir dire*, the scope of *voir dire* is within the discretion of the trial judge. [**See** Pa.R.Crim.P. 631 cmt. and 632 cmt.]
>
> *                *                *
>
> That the scope of *voir dire* is in the discretion of the trial court is well-settled Pennsylvania law. The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight. Decisions of the trial judge concerning *voir dire* will therefore not be reversed in the absence of palpable error.

*Commonwealth v. Ellison*, 902 A.2d 419, 424 (Pa. 2006) (footnotes incorporated; internal citations and quotations omitted).

When a challenged juror initially expresses a predisposition to credit the testimony of a police officer over that of a civilian witness, the prospective

juror's qualification to serve may be further explored by the court, under oath, as a means to assess whether he or she would be able to set aside personal inclinations and evaluate the evidence in accordance with the court's instructions. *See Commonwealth v. W.P.*, 2017 WL 1380759, at *5 (Pa. Super. 2017) ("[A]n initial expression of sympathy or predisposition toward one party does not automatically require disqualification; [i]nstead, the trial court has the option of further examining the potential juror to determine if he or she would be able to put aside those feelings and fairly evaluate the evidence presented at trial.") *comparing* **Ingber**, **supra** and **Commonwealth v. Johnson**, 445 A.2d 509 (Pa. Super. 1982).

In this case, there is no dispute that the venire completed written juror questionnaires as required pursuant to Pa.R.Crim.P. 632. When several potential jurors indicated that they believed they could not be fair and, impartial or unbiased and were more likely to believe a police officer than a civilian witness, they were specifically identified by defense counsel. **See** Trial Court Opinion, 8/11/2022, at 5. The trial court then conducted additional *voir dire* of these potential jurors in open court, explained the questions on the questionnaire more thoroughly, and told them to be candid and honest while under oath. *Id.* at 5-6. The trial court concluded:

> The court was able to observe the demeanor of these prospective jurors when they answered [oral questions posed by the court] and, following an assessment of their credibility and ability to be impartial, the court determined that these individuals could follow its instructions and serve their duty fairly, impartially, and without any bias. These prospective jurors' responses under oath satisfactorily answered whether they could be fair, impartial, and

unprejudiced. The unequivocal response from these jurors provided no basis for further inquiry.

Therefore, the court did not abuse its discretion in denying [Appellant's] request to question individual members of the venire.

***Id.*** at 6-7 (case citations omitted).

We agree with the trial court's analysis. Here, the trial court complied with Pennsylvania Rules of Criminal Procedure 631 and 632. There is no question that the potential jurors filled out a preliminary questionnaire under Rule 632. The trial court, in turn, used the questionnaires in conjunction with, and not as a substitute for, its subsequent oral examination under Pa.R.Crim.P. 631(E). Rule 631(E) also gave the trial court discretion to permit Appellant to conduct additional questioning; however, the trial court determined that jurors unequivocally responded that they could be fair and impartial and there was no basis for further inquiry.[3] We accord the trial court's credibility determination with great weight and discern no palpable error. Accordingly, Appellant's first claim lacks merit.

Appellant's next three issues challenge the sufficiency of the evidence supporting several of his convictions and, on these issues, we adhere to the following standards:

_____

[3] The trial court specifically asked the venire whether anyone worked in law enforcement or had a parent, spouse, sibling, or child who worked in law enforcement. N.T., 8/31/2021, at 27-28. Two potential jurors answered affirmatively, but when further questioned stated that it would not prevent them from being fair and impartial in this case. ***Id.*** at 28-29.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Dixon*, 276 A.3d 794, 800 (Pa. Super. 2022) (internal citation and original brackets omitted).

In his second issue presented, Appellant contends there was insufficient evidence to support his conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) because the Commonwealth failed to prove that Appellant caused or attempted to cause serious bodily injury. *Id.* at 48. Appellant's brief concedes that "the abuse that [the victim] sustained at the hands of [Appellant] was certainly serious" but argues there was no evidence that the victim suffered serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* at 50-51. Appellant contends that the evidence presented showed he lacked the requisite intent and the circumstances of the case do not support the inference

- 11 -

that he intended to inflict greater injury than that which was actually inflicted.

***Id.*** at 56-57.

Section 2702 of the Crimes Code provides, in pertinent part:

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301(a). This Court has further explained:

For aggravated assault purposes, an attempt is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Accordingly, we recognize that intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005) (*en banc*) (internal quotation marks, citations, and brackets omitted).

Here, in view of the totality of circumstances, the trial court determined that Appellant attempted to cause serious bodily injury. As the trial court

noted, two telephone calls immediately preceding the "April 1, 2018 late evening attack demonstrated [Appellant] was angry [because the victim] involved the police following the [earlier] morning attack and [because she] obtained a PFA [o]rder." Trial Court Opinion, 8/11,2022, at 10. Appellant specifically stated, "Bitch, you did what? … All right, you're going to pay for that." *Id.* Appellant hung up on the victim, immediately showed up at her residence, tackled her to the ground, and strangled her to the point she lost consciousness. *Id.* Upon review of the record and applicable law, we agree with the trial court's conclusion that there was sufficient evidence that Appellant attempted to cause serious bodily injury which created a substantial risk of death.

In his third issue presented, with regard to his conviction for aggravated assault with a deadly weapon pursuant to 18 Pa.C.S.A. § 2702(a)(4), Appellant claims "[t]he jury was wrong to conclude that the metal file [used during the incident in question] constituted a deadly weapon because it is not designed as a weapon" and that he "used it to smack [the victim] in her arms and back." *Id.* at 61. Appellant posits that such actions constituted simple assault rather than aggravated assault with a deadly weapon. *Id.* In sum, Appellant maintains:

> It was not as if [Appellant] attempted to hit [the victim] in the face with the file while she was unconscious. He did not use the metal file to stab her. In spite of [the victim's] testimony that she blocked him from hitting her in the face with the file, there was no evidence presented to conclude that she was capable of preventing [Appellant] from doing what he willed with her.

- 13 -

*Id.* at 61-62.

A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(4) if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). A deadly weapon is defined as "any firearm, loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301.

> Items not normally considered deadly weapons can take on such status based upon their use under the circumstances. **Commonwealth v. Raybuck**, 915 A.2d 125, 128 (Pa. Super. 2006) (concluding commercial mouse poison placed in sandwich was a deadly weapon) (*citing* **Commonwealth v. Scullin**, 607 A.2d 750, 753 (Pa. Super. 1992) (finding tire iron thrown at victim was a deadly weapon), *appeal denied*, 621 A.2d 579 (Pa. 1992)); **Commonwealth v. Cornish**, 589 A.2d 718, 721 (Pa. Super. 1991) (recognizing fireplace poker used to strike victim constituted a deadly weapon). "The definition of deadly weapon does not demand that the person in control of the object intended to injure or kill the victim." **Scullin**, 607 A.2d 753.

**Commonwealth v. Solomon**, 151 A.3d 672, 677 (Pa. Super. 2016).

In this case, the trial court determined that the metal file Appellant struck the victim with constituted a deadly weapon, opining:

> A sharp metal file when violently and indiscriminately thrusted toward another individual's face and other body parts is calculated or likely to produce serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Further, the lacerations on [the victim's] body

demonstrated that [Appellant] had struck her with the metal file with a substantial amount of force.

Trial Court Opinion, 8/11,2022, at 11.

Upon review, we agree. The Commonwealth introduced sufficient evidence that the metal file was a device, not normally considered a deadly weapon, but was used by Appellant in a manner likely to produce death or serious bodily injury. In fact, a metal file is akin to the items used, and ultimately found to be deadly weapons, in both **Scullin** and **Cornish**, a tire iron and a fireplace poker, respectively, as set forth above. As such, we believe that the evidence was sufficient to support Appellant's conviction for aggravated assault with a deadly weapon.[4]

In his fourth issue presented, Appellant argues that there was insufficient evidence that he received sufficient notice of the PFA order the victim filed to support his first-degree felony conviction for strangulation under 18 Pa.C.S.A. §§ 2718(a)(1) and (d)(3)(i). Appellant's Brief at 63-67. In sum, Appellant argues:

> Here, the evidence that [Appellant] was notified of the PFA order was [the victim] testifying that she told him on the phone that he should not be contacting her because of the [PFA] order [she filed earlier that day], which she said angered him. There is no question, though, that [Appellant] was not served with the paperwork explaining the order until after he was arrested in this matter. There was no evidence presented that [Appellant]

_____

[4] Furthermore, we note that the trial court also found that, in the alternative, the string that Appellant pulled from the victim's sweatshirt and used in attempt to apply pressure to the victim's neck also constituted a deadly weapon. **See** Trial Court Opinion, 8/11,2022, at 11. Appellant does not challenge that determination on appeal.

- 15 -

understood what a PFA [order] was nor that he was aware of the consequences of violating one[.]

*Id.* at 66.  As such, Appellant asserts that he must be resentenced for a second-degree felony strangulation conviction.  *Id.* at 67.

The relevant portion of the Crimes Code provides, in pertinent part:

(a)  Offense  defined.--A  person  commits  the  offense  of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck[.]

18 Pa.C.S.A. § 2718(a)(1).  "A violation for this section shall constitute a felony of the first[-]degree if … at the time of the  commission of the offense, the defendant is subject to an active protection from abuse order … that covers the victim[.]"  18 Pa.C.S.A. § 2718(d)(3)(i).

While our research has not revealed caselaw directly on point with Appellant's contention regarding the grading of a strangulation offense with  a PFA aggravator, our Supreme Court has interpreted whether a defendant "either be given actual notice or have the equivalent knowledge of a PFA order" in order to be "subject to" a sentencing aggravator under 42 Pa.C.S.A. § 9711(d)(18).[5]  *See Commonwealth v. Staton*, 38 A.3d 785, 794 (Pa.

---

[5]  "At the time of the killing the defendant was subject to a court order restricting in any way the defendant's behavior toward the victim pursuant to 23 Pa.C.S. Ch. 61 (relating to protection from abuse) or any other order of a court of common pleas or of the minor judiciary designed in whole or in part to protect the victim from the defendant."  42 Pa.C.S.A. § 9711(d)(18).

2012), *citing* **Commonwealth v. Stallworth**, 781 A.2d 110, 124 (Pa. 2001).

The **Staton** Court ultimately determined:

> The question [becomes] whether there was sufficient evidence that appellant had the equivalent knowledge or anecdotal knowledge of the PFA order[.]
>
> *            *            *
>
> In any case, civil or criminal, party admissions or confessions are not required to establish necessary facts. Evidence of conduct, circumstantial evidence, and logical inferences may suffice to prove certain facts.

**Staton**, 38 A.3d at 794. Further, examining this Court's decision in **Commonwealth v. Padilla**, 885 A.2d 994 (Pa. Super. 2005), the **Staton** Court recognized that "a telephone conversation with a police officer was adequate to convey notice that a PFA order had been entered against a defendant for purposes of a conviction for indirect criminal contempt […] constituting actual notice or its equivalent, even in the absence of personal service of the actual order." **Id.**

In this case, the trial court, relying on **Staton**, **Stallworth**, and **Padilla**, concluded that "the evidence was sufficient to establish that [Appellant] had equivalent knowledge or anecdotal knowledge of the temporary PFA order[.]" Trial Court Opinion, 8/11/2022, at 14. The trial court found that the victim specifically told Appellant to stay away from her because she had obtained a PFA order against him. **Id.** at 13. Appellant reacted angrily and told her that she would pay for it. **Id.** at 14. During the subsequent attack, the victim pleaded with Appellant to leave and even told him that she would "drop the

PFA" if he would go. ***Id.*** Based upon this record, including the victim's testimony and evidence of Appellant's conduct and logical inferences, we believe there was sufficient evidence to support application of the grading enhancement set forth within Section 2718(3)(i) since the victim supplied Appellant with anecdotal or equivalent knowledge that there was a temporary PFA order entered against him by the victim at the time he strangled her. As such, Appellant's fourth issue lacks merit.

Finally, Appellant argues that his aggregate sentence is excessive and that the trial court abused its discretion by focusing solely on the nature of the crimes without considering his rehabilitative needs. Appellant's Brief at 68-72. Appellant concedes that each individual sentence was within the guidelines but claims the trial court focused on his conduct which it characterized as "cowardly" and "egregious" and "explicitly stated that [Appellant] was not remorseful even though he expressed remorse in the pre-sentence investigation report and multiple times at the sentencing hearing." ***Id.*** at 70-71. Instead, Appellant suggests that the trial court "aggregated sentences on multiple charges in this matter for no other reason than to punish [Appellant] which is an abuse of discretion requiring the matter be remanded for resentencing." ***Id.*** at 72.

This claim challenges the discretionary aspects of Appellant's sentence. Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. ***See*** 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary

aspects of his sentence. ***Id.*** As this Court has explained, in order to reach the merits of a discretionary aspects claim,

> we must engage in a four[-]part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his [or her] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

***Commonwealth v. Williams***, 198 A.3d 1181, 1186 (Pa. Super. 2018) (citation omitted). Here, Appellant has complied with the first three requirements. He filed a post-sentence motion preserving the sentencing issue, filed a timely notice of appeal, and included a concise statement of the reasons relied upon pursuant to Pa.R.A.P. 2119. As such, we must examine whether Appellant raises a substantial question.

"A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268–1269 (Pa. Super. 2013) (internal citations, quotations, and footnote omitted). Additionally, we have stated:

> To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 1270 (internal citations, quotations, and footnote omitted*); see also Commonwealth v. Moury*, 992 A.2d 162, 171–172 (Pa. Super. 2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

Here, the trial court sentenced Appellant to "an aggregate sentence of nine and one-half (9½) to nineteen (19) years of imprisonment." Trial Court Opinion, 8/11/2022, at 16. The trial court imposed consecutive sentences consisting of "a standard rage sentence of eleven (11) to twenty-two (22) months of imprisonment with respect to one of the simple assault charges, a standard range sentence of seventy-one (71) to one hundred and forty-two (142) months of imprisonment with respect to the strangulation – throat/neck charge and a standard range sentence of thirty-two (32) to sixty-four (64) months of imprisonment with respect to the aggravated assault with a deadly weapon charge." *Id.* at 16-17. The trial court further noted that Appellant's sentences on the remaining criminal "counts either merged for sentencing purposes or the court ran them concurrent." *Id.* at 17.

There is no dispute that none of Appellant's sentences exceeded the statutory maximum for each separate offense. Furthermore, the trial court's decision to sentence Appellant to consecutive terms of imprisonment does not raise the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case. Appellant's bald claim that his aggregate sentence was excessive does not forward a plausible argument that his guideline sentences were clearly unreasonable. Hence, Appellant has not raised a substantial question for our review.

Even if Appellant raised a substantial question, we conclude that the trial court did not abuse its discretion in sentencing. Our standard of review is as follows:

> An appellate court will not disturb the sentencing court's judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. To demonstrate that the sentencing court abused its discretion, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed.
>
> Our Supreme Court has determined that where the trial court is informed by a pre-sentence report [("PSI")], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

- 21 -

*Commonwealth v. Morgan*, 258 A.3d 1147, 1157–1158 (Pa. Super. 2021) (internal citations and quotations omitted).

> Here, the trial court opined:
>
> The court also had the benefit of a PSI report and considered all of the rehabilitative and mitigating factors related to [Appellant] contained therein. Additionally, the court considered all other factors required under 42 Pa.C.S.A. § 9721(b), such as the sentencing guidelines. The court also had the benefit of sentencing memorand[a] prepared by the Commonwealth and defense counsel. Defense counsel also read letters drafted by [Appellant's] sisters and a close friend which referenced, inter alia, the assistance [Appellant] provided to his mother and his children. Therefore, the record indicates the court was aware of relevant information regarding [Appellant's] character, including rehabilitative needs and mitigating factors, and weighed this information when it imposed sentence.

Trial Court Opinion, 8/11/2022, at 17. Ultimately, the trial court determined Appellant's sentence was imposed based upon his violent criminal history, the multiple, "brutal" crimes committed against the victim over a protracted period, the psychological impact of the crimes upon her, and the danger Appellant posed to the public. *Id.* at 17-20. Finally, the trial court determined that Appellant was not entitled to a "volume discount" for the crimes. *Id.* at 19. Here, the trial court had the benefit of a PSI report and demonstrated that it weighed the sentencing guidelines together with the facts of the crimes and Appellant's character in a meaningful fashion. Moreover, the sentences neither exceeded the statutory limits nor were manifestly excessive. As a result, we discern no abuse of discretion and Appellant is not entitled to relief on his discretionary aspect of sentencing claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2023