J-S16021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZHYARE KNOX | : | |
| | : | |
| Appellant | : | No. 1775 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 10, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006845-2018

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED AUGUST 08, 2024**

Zhyare Knox ("Knox") appeals from the judgment of sentence imposed following his convictions for aggravated assault, simple assault, recklessly endangering another person, possession of a firearm prohibited, carrying a firearm without a license, and carrying a firearm in public in Philadelphia.[1]  We affirm.

In 2018, Albert James ("James") was shot in the neck while walking his mother's dog in Philadelphia.  Police transported James to the hospital where he was treated for spinal cord damage and underwent emergency medical procedures.  Detectives investigating the shooting obtained video footage from nearby surveillance cameras which showed Knox in the vicinity of the shooting, taking a shooting stance toward James from across the street, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705, 6105(a)(1), 6106(a)(1), 6108.

then fleeing the area after the shooting. Detectives interviewed Basel Albarouki ("Albarouki"), who was near the shooting and identified Knox from a photo array as an individual he saw fleeing from the scene of the shooting. During the investigation, police also obtained a warrant to search the home of Knox's mother, where Knox was then living. Police recovered a firearm and mail in Knox's name from his childhood bedroom, which had a door with Knox's initials on it. Based on the firearm located in the bedroom, police charged Knox at CP-51-CR-0006844-2018 for possession of a firearm prohibited. Knox was later arrested and charged at the above docket with attempted murder and the above-referenced charges.

In September 2021, both matters proceeded to a consolidated bench trial at which Knox's counsel stipulated that Knox was ineligible to possess a firearm based on his prior criminal record. *See* N.T., 9/20/21, at 147. The Commonwealth presented the testimony of several witnesses, including James, who testified that, on the night of the shooting, he was walking his mother's dog on Seventh Street when he heard three gunshots followed by a pause, and then a fourth gunshot, at which point he felt a pinch in his neck and fell to the ground where he remained unconscious. *Id*. at 53. James explained that when he woke up one week after the shooting he could not talk, swallow, or move his arms. *Id*. at 54-55. As a result of the shooting, James underwent several surgeries, had a feeding tube placed in his stomach because he could not eat or drink, and required a respirator to help him

breathe. *Id*. at 56-57. James testified that, since the shooting, his ability to talk, breathe, eat, and swallow is diminished. *Id*. at 59.

The Commonwealth also presented the testimony of Albarouki, who stated that on the night of the shooting, he was near Eighth and Wallace Streets when he heard multiple gunshots. *See id*. at 22-25. As two men ran past Albarouki, he heard one of them say, "Yo, they're shooting. They're shooting. Run." *Id*. at 26. Albarouki noted that the speaker, a dark-skinned African American male, was holding his waistband while running. *Id*. at 26-31. Albarouki explained that, approximately two weeks after the shooting, he spoke to detectives regarding the incident, and was shown a photo array from which he selected a photo of Knox and identified him as the male who spoke to him while fleeing from the scene of the shooting. *Id*. at 28, 39-40.

Detective Michael Repici testified that he obtained video footage from various surveillance cameras near the shooting. *Id*. at 63. Detective Thorsten Lucke testified that he compiled the surveillance footage into a montage showing an individual, later identified as Knox, wearing a dark sweatsuit with white stripes down the sleeves and legs. *Id*. at 75, 84. The montage tracked Knox, identified by his distinctive clothing, in various nearby businesses prior to the shooting. *Id*. at 78-81. Detective Lucke testified that the montage showed that Knox and another individual, later identified as Quimar Patterson, rode bikes toward the location of the shooting, jumped off their bikes, Knox approached the location of the shooting, stretched out his arms towards James in a shooting stance from across the street, and then ran away. *Id*. at 68,

82-89, 93-99. Detective Repici explained that when he went to search the crime scene for ballistic evidence, none was found. *Id*. at 65. Knox was also identified as the shooter by Officer Richard Alexander based on his personal experiences with Knox and after viewing photos pulled from the surveillance footage. *Id*. at 66-67, 133-35.

In connection with the possession of a firearm prohibited charge at CP-51-CR-0006844-2018, Detective Michael Rocks testified that he served a search warrant on Knox's mother's residence and recovered a firearm and mail addressed to Knox from his childhood bedroom. *Id*. at 140. The door of the bedroom where the firearm was found had Knox's initials on it. *Id*. at 141. That firearm was tested for DNA and compared to Knox's DNA, but the results were inconclusive. *Id*. at 146. The Commonwealth entered into evidence a transcript of a telephone call from prison between Knox and his mother in which she repeatedly claimed that he had a firearm in her home to which Knox twice responded, "Yo. Alright." *See* Exhibit C-20.

Knox testified in his defense. Knox agreed that he was the individual in the surveillance videos wearing the dark sweatsuit with white stripes. *Id*. at 151-52. Knox further agreed that the video footage showed himself and Patterson at the time of the shooting, but Knox claimed that they were being shot at, not shooting, and that was why they ran away. *Id*. at 157-58. Knox conceded that around the time of the shooting, he lived with his mother in her home, but noted that his sister and two of his cousins also lived there at the time. *Id*. at 153-54. Knox testified that when he was staying with his mother

- 4 -

around the time of the shooting, he stayed in different rooms, and denied ownership of the firearm found in his childhood bedroom. *Id*. at 155-56.

At the conclusion of trial, the trial court found Knox not guilty of attempted murder but guilty of the remaining charges at the above docket. The trial court also found Knox guilty of possession of a firearm prohibited at CP-51-CR-0006844-2018. The trial court ordered that a presentence investigation report ("PSI") be prepared in advance of the sentencing hearing.

On March 10, 2022, the trial court conducted a sentencing hearing. At the conclusion of the hearing, the trial court sentenced Knox to seven to fourteen years in prison for aggravated assault, to run concurrently with a sentence of three and one-half to seven years in prison for carrying a firearm without a license. Each of these sentences fell within the standard range of the sentencing guidelines. Knox received no further penalty for his remaining convictions at the above docket. At CP-51-CR-0006844-2018, the trial court sentenced Knox to a concurrent term of one to two years in prison for possession of a firearm prohibited.

In the instant matter, Knox filed a post-sentence motion to reconsider sentence arguing that the sentence imposed was excessive due to his age, his single prior contact with the criminal justice system as an adult, and the fact that his prior record score ("PRS") was based predominantly on offenses committed when he was a juvenile. The motion was denied by operation of

law on July 21, 2022.[2]  Knox filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Knox raises the following issues for our review:

I.      Whether the evidence was insufficient to sustain guilty verdicts for aggravated assault and [carrying a firearm without a license]?

II.     Whether [Knox's] sentence was unduly harsh and excessive?

Knox's Brief at 7 (unnecessary capitalization omitted).

In his first issue, Knox challenges the sufficiency of the evidence supporting his convictions for aggravated assault and carrying a firearm without a license.  A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo* and our scope of review plenary.  ***See Commonwealth v. Johnson***, 236 A.3d 1141, 1152 (Pa. Super. 2020).  When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof

---

[2] Knox did not file a direct appeal following the denial of his post-sentence motion.  However, Knox filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), ***see*** 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights *nunc pro tunc*.  The PCRA court issued an order reinstating Knox's direct appeal rights at the above docket.  No PCRA relief was granted at CP-51-CR-0006844-2018 because Knox was no longer serving the sentence imposed at that docket; thus, the conviction and sentence in that matter are not before us.

by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Orr**, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

A person is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).[3] Serious bodily injury is

_____

[3] The record reflects that Knox's aggravated assault charge did not specify a subsection of the statute. However, Knox's conviction was graded as a felony of the first degree. The aggravated assault statute provides that subsections (a)(1), (2), and (9) are felonies of the first degree. Subsections (a)(2) and

*(Footnote Continued Next Page)*

defined as, "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 2301. A gunshot wound to one's throat unquestionably satisfies the definition of serious bodily injury. *See Commonwealth v. Matthews*, 870 A.2d 924, 933 (Pa. Super. 2005) (holding that inflicting a gunshot wound to the throat constitutes serious bodily injury).

A person is guilty of carrying a firearm without a license when they, *inter alia*, carry a firearm concealed on or about their person, except in their abode or fixed place of business, "without a valid and lawfully issued license." 18 Pa.C.S.A. § 6106(a)(1).

Knox argues that the Commonwealth failed to prove beyond a reasonable doubt that he was the person who shot James. Knox points out that James did not see the individual who shot him. Knox claims that the evidence was insufficient to convict him of carrying a firearm without a license as there was no ballistic evidence recovered, no surveillance footage of him carrying a firearm, and no eyewitness accounts of him carrying a firearm.[4]

_____

(9) do not apply to the facts of the instant case, therefore we analyze this claim as an argument that the evidence was insufficient to sustain a verdict of guilty of 18 Pa.C.S.A. § 2702(a)(1).

[4] Knox presents additional arguments regarding the firearm recovered in his mother's home pursuant to the search warrant. However, as we have
*(Footnote Continued Next Page)*

Knox maintains that he never possessed a firearm. Knox argues that the testimony at trial did not establish that he intentionally, knowingly, or recklessly intended to cause serious bodily injury. According to Knox, the evidence was so weak and inconclusive that his convictions for aggravated assault and firearms not to be carried without a license were not established beyond a reasonable doubt.

The trial court considered Knox's first issue and concluded that it lacked merit.[5] The trial court reasoned:

> [The trial court judge], as the finder of fact, found the Commonwealth's witnesses credible. The evidence and testimony presented at trial – including [Knox's] own testimony – put him at the scene of the shooting on the night in question. The surveillance footage showed [Knox] in a "shooting stance" with his arms raised extended, facing in the direction of [James]. Struck by a single gunshot through his neck, [James] fell to the ground[,] sustaining life threatening injuries. [Knox] and [Patterson] then fled the scene, running past [Albarouki]. While [Albarouki] didn't see [Knox] holding a gun, he observed [Knox] holding his waistband as he ran past [Albarouki]. This testimony further evinces the finding that [Knox] committed the offenses for which he was found guilty.

Trial Court Opinion, 8/15/23, at 6.

Viewing the evidence in the light most favorable to the Commonwealth

_____

indicated, Knox's conviction for possessing that firearm is not at issue in this appeal, rendering these arguments irrelevant.

[5] The Honorable Mia Roberts Perez served as the trial and sentencing judge in this matter before her appointment to the United States District Court. Thereafter, this matter was administratively reassigned to the Honorable Nicholas Kamau, who authored the Rule 1925(a) opinion.

and giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, we conclude that Knox's convictions are supported by sufficient evidence. Detective Lucke testified to extensive surveillance video showing Knox in the immediate vicinity of the shooting leading up to, during, and after the shooting. Officer Alexander identified Knox as the shooter from the surveillance footage using his personal experience. Knox, himself, verified that he and Patterson were the individuals seen in the surveillance videos, and confirmed he was wearing the dark sweatsuit with white stripes in the surveillance videos, which was the clothing worn by the shooter. Detective Lucke's testimony along with the surveillance video depicts Knox's movements up to and including the shooting of James. Further, Albarouki's testimony, viewed in the light most favorable to the Commonwealth and with all reasonable inferences drawn therefrom, was sufficient to establish that Knox fled from the shooting while concealing a firearm in his waistband. James testified to the extensive and life-threatening serious bodily injuries he sustained from the shooting. Thus, viewed in the light most favorable to the Commonwealth, the evidence at trial was sufficient to permit the finder of fact to determine beyond a reasonable doubt that Knox was the shooter, possessed a firearm during the shooting, had no license to carry a firearm, shot James intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, and caused serious bodily injury to him. Accordingly, Knox's first issue entitles him to no

relief.

In his second issue, Knox contends that his sentence is unduly harsh and excessive, which claim presents a challenge to the discretionary aspects of his sentence. We consider a challenge to the discretionary aspects of a sentence to be a petition for permission to appeal, as the right to pursue such a claim is not absolute. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Before we reach the merits of a challenge to the discretionary aspects of sentence, this Court must conduct a four-part analysis determining:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

In the instant case, Knox filed a post-sentence motion for reconsideration, a timely notice of appeal, and included in his brief a Rule 2119(f) statement. However, we must initially determine whether the issues Knox raises in his Rule 2119(f) statement were properly preserved for our review.

In his Rule 2119(f) statement, Knox purported to raise the following issues: (1) "the court did not provide adequate reasons for the high sentence;"

(2) "[Knox] provided credible character evidence to show that he is capable of being a positive contributing member of the community with the support of his family members;" and (3) "the sentencing court imposed a sentence that is so manifestly excessive as to constitute too severe a punishment." Knox's Brief at 12-13 (unnecessary capitalization omitted).

Our review of Knox's post-sentence motion discloses that he did not raise a claim that the sentencing court failed to adequately state the reasons for his sentence on the record. **See** Motion for Reconsideration, 3/21/22, at unnumbered 1-4. Similarly, Knox did not raise any claim in his post-sentence motion that that he provided character evidence showing that he is capable of contributing positively to the community. **See id**. The sentencing hearing transcript further discloses that Knox did not raise these issues at the time of sentencing. **See** N.T., 3/10/22, at 38-40. Thus, Knox did not give the sentencing judge an opportunity to reconsider or modify his sentence on these bases. **See Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003) (holding that issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or during sentencing). Accordingly, these issues are waived. **See id**.; **see also Commonwealth v. Reeves**, 778 A.2d 691, 692-93 (Pa. Super. 2001) (holding that, by failing to raise the specific claim that the trial court failed to state reasons for sentence on the record in

post-sentence motion, the trial court was deprived of opportunity to consider the claim and, thus, the claim was waived on appeal).[6]

Knox's waiver of the above issues leaves only a bald claim of an excessive sentence in his Rule 2119(f) statement. We will review this claim to determine whether Knox has presented a substantial question for our review. We determine what constitutes a substantial question on a case-by-case basis. **See Commonwealth v. Glass**, 50 A.3d 720, 727 (Pa. Super. 2012). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id**.

A claim that a sentence is excessive, even if it is within the statutory limits, can raise a substantial question for appellate review. **See Commonwealth v. Mouzon**, 812 A.2d 617, 624 (Pa. 2002). However, a

_____

[6] We note that, even if Knox had preserved his claim that the sentencing court failed to adequately state the reasons for his sentence on the record, we would have concluded that it lacked merit, as the record reflects that the sentencing court provided a statement of reasons for Knox's sentence on the record at the time of sentencing, including the court's consideration of the PSI, Knox's PRS, the gravity of the offense, his lack of acknowledgement of the victim, Knox's history of incarceration, and his lack of a support system. **See** N.T., 3/10/22, at 34-38. Similarly, even if Knox had preserved his claim that he presented character evidence showing that he is capable of contributing positively to the community with the support of his family members for our review, we would have concluded that it lacked merit, as the record reflects that the sentencing court did, in fact, consider Knox's family support system in fashioning his sentence and found that system to have a negative effect on Knox. **See** id. at 37

bald allegation of excessiveness is insufficient to raise a substantial question.
*See id*. at 627. Instead, an appellant making an excessiveness claim raises a substantial question when he sufficiently articulates either: (1) the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code; or (2) a particular fundamental norm underlying the sentencing process. *See Mouzon*, 812 A.2d at 624; *see also Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). To meet this sufficiency requirement:

> [T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.*, the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range). If the Rule 2119(f) statement meets these requirements, we can decide whether a substantial question exists.

*Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*).

In his Rule 2119(f) statement, Knox did not specify the particular provision of the Sentencing Code that he contends was violated. Nor did he specify the particular fundamental norm that the sentence purportedly violated and the manner in which the sentence violates that norm. Instead,

he simply claimed that his sentence was excessive.[7]  ***See*** Knox's Brief at 12. We conclude that Knox's Rule 2119(f) statement amounts to a bald assertion that his sentence was excessive.  ***See Commonwealth v. Fisher***, 47 A.3d 155, 159 (Pa. Super. 2012) (finding no substantial question presented where appellant merely claimed the sentence was "manifestly unreasonable . . . in excess of the guidelines without sufficient justification"); ***see also Commonwealth v. Reynolds***, 835 A.2d 720, 733 (Pa. Super. 2003) (finding no substantial question presented where appellant merely claimed the sentence was unreasonable and resulted in prejudice because of the extreme end of the sentencing ranges).  Accordingly, as Knox failed to raise a substantial question for our review, we decline to review the merits of Knox's discretionary sentencing claim.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024

---

[7] We note that the record reflects that Knox's sentences fell within the standard guideline range for his offenses.  ***See*** N.T., 3/10/22, at 38.

- 15 -